### B. R. GAY v. ROANOKE RAILROAD AND LUMBER COMPANY ET AL.

(Filed 23 September, 1908.)

**1. Trespass—Question of Ownership—Evidence.**

In an action for damages arising upon the alleged negligence of defendant, through which the timber, etc., upon plaintiff's lands, consisting of several tracts, was burned, it was admitted in open court that the plaintiff was the owner and in possession of the land upon which the traspass was alleged to have been committed: *Held*, it was competent upon cross-examination for defendant's counsel to ask the plaintiff, a witness in his own behalf, if a certain tract of the land was not owned by some one else at the time of the fire, as tending to show that he had sold it, and thereby impeach his estimate of the damage he had testified to on his direct examination.

**2. Contracts, Interpretation of—Independent Contractor—Evidence.**

When a party defendant aptly sets up the defense of independent contractor in relation to his codefendant, and the only evidence thereof is a written contract to that effect, free from ambiguity, the interpretation of the contract involves questions of law alone, and it is error for the trial Judge to charge the jury that the paper-writing does not establish the relation of independent contractor, but they can consider it in finding whether such relationship exists.

**3. Same.**

When, under a lawful and clearly expressed contract. one party employs another to do a certain work for him without any supervision or control, and the party for whom the work is

done is interested only in its ultimate result, the latter is not liable to third persons in damages for the negligence of the former, provided he has not been negligent in selecting him as a suitable person for the purpose.

HOKE, J., concurring in result.

ACTION tried before *Lyon, J.*, and a jury, at December Term, 1907, of GREENE.

Damages are sought for the burning of timber, etc., upon plaintiff's lands, through the negligence of defendant's agents, employees, etc. Among the defenses set up was that of independent contractor, and during the trial a written contract was introduced in evidence by defendant, as follows:

"This agreement, made this 1 February, 1905, by and between W. R. Jackson and Milton H. Jackson, trading as Jackson Bros., of Lugwell, Pitt County, North Carolina, and the Roanoke Railroad and Lumber Company, of Norfolk, Virginia, a corporation duly organized under the laws of North Carolina, witnesseth:

"That whereas the said Roanoke Railroad and Lumber Company owns certain tracts of timber in Greene and Pitt counties, North Carolina, on the East Carolina Railroad, which timber up to this time has been logged by Surry Parker, of Pine Town, North Carolina, the said Parker owning certain logging equipment, which he has this day sold to the said Jackson Bros., and the said Jackson Bros. being desirous to enter into a contract with the said Roanoke Railroad and Lumber Company for logging said timber: Now, therefore, this agreement witnesseth:

"1. That the said Jackson Bros. agree to cut all of the timber the said Roanoke Railroad and Lumber Company now own or may hereafter purchase, during the existence of this contract, in Pitt and Greene counties, adjacent to the territory which they now own, into saw logs, 16 feet 4 inches, 14 feet 4 inches, and 12 feet 4 inches long, and deliver said

148—22

logs over tramroads, built at their own expense, to side
tracks along the line of said East Carolina Railroad, and
to load same on flat cars furnished for the purpose. The
said Jackson Bros. agree to load 20,000 feet per day for
each working day until this contract is completed, and to
load not less than 3,500 feet of logs, measured by Doyle's
rule, on each and every car furnished them, and they are
not required to load more than seven cars on any one day.

"3. That said Jackson Bros. agree to cut the timber in
proper and workmanlike manner, and as close as the said
Roanoke Railroad and Lumber Company may direct, and
to cut all and every suitable tree into logs before leaving
any one location.

"4. The said Jackson Bros. further agree to load said
cars in proper manner, logs being secured to stand trans-
portation by the railroad, and the said loading to be done
according to directions as given by the Atlantic Coast Line
Railroad Company.

"5. They further agree that they will pay for any delays
or damages that may occur to the Atlantic Coast Line Rail-
road should they fail to load the logs as agreed upon, as per
contract between the East Carolina Railroad Company and
the Atlantic Coast Line Railroad and the said Roanoke
Railroad and Lumber Company, dated the .... day of ....,
and which contract is made a part of this agreement, which
are such portions of this agreement as may refer to the penal-
ties for not loading cars when set in on sidings for that
purpose.

"6. The said Jackson Bros. agree to keep up, at their own
expense, in good working order, the locomotive and logging
cars furnished them by the said Roanoke Railroad and Lum-
ber Company for the purpose of doing said work; to unload
all railroad iron furnished them for the purpose of laying
tracks, at their own expense, and, when through with said
contract, to take up all of said railroad iron, spikes and

splices and to load them on cars furnished for moving of same, and also return said locomotive and cars, loaded on cars of the Atlantic Coast Line Railroad, when through with them, in good order.

"The Roanoke Railroad and Lumber Company hereby agrees to furnish said Jackson Bros. all the railroad iron and locomotive and logging cars necessary to do this work, and to pay to them the sum of $3 per thousand feet for merchantable logs so cut, hauled and delivered and loaded on cars of the Atlantic Coast Line Railroad, on the side track located for the purpose, and to pay them on the 5th and 20th of each month for the work done. It is further and mutually agreed that all logs loaded on said cars shall be sound and merchantable, and if the said Jackson Bros. shall load any logs not sound and merchantable, then they shall be responsible for all freight and expenses on all such logs; and it is further mutually agreed that all measurements of logs shall be made by Doyle's rule, by a competent log scaler, to be employed by the said Roanoke Railroad and Lumber Company, who shall measure said logs as soon as they arrive at their destination at Pinner's Point, and that a statement of all logs so received shall be made to the said Jackson Bros. twice a month.

"And whereas the said Roanoke Railroad and Lumber Company has this day advanced to said Jackson Bros. the sum of $3,000, to be paid to the said Parker aforesaid for his logging equipment, it is hereby mutually agreed that the said Jackson Bros. shall give to the said Roanoke Railroad and Lumber Company a bill of sale on said property purchased from said Parker, and that the said Roanoke Railroad and Lumber Company shall retain out of the sum of $3, to be paid to Jackson Bros. for each thousand feet of logs delivered the sum of fifty cents, until all of said $3,000, with interest, is paid back to said Roanoke Railroad and Lumber Company; and it is further mutually agreed that, after the

said $3,000 is paid off, said Roanoke Railroad and Lumber Company shall retain the sum of twenty-five cents per thousand feet out of said contract money, until all of this contract is completed and all of the timber owned and hereafter purchased by the said Roanoke Railroad and Lumber Company is logged in accordance with this contract, at the completion of which the said Roanoke Railroad and Lumber Company agrees to pay all of said sum so retained, with interest, to the said Jackson Bros.· But it is hereby understood that the said sum to be retained for the faithful performance of this contract shall at no time exceed the sum of $2,000, and all amounts accruing above said sum of $2,000 shall be paid to the said Jackson Bros.

"Witness our hands and seals.

"JACKSON BROS.                                        [Seal.]

"ROANOKE RAILROAD AND LUMBER COMPANY,

"R. S. COHN, *Secretary.*                            [Seal.]

"Witness as to Jackson Bros.: S. W. CLARKE.

"Witness as to Railroad and Lumber Company: G. R. SIMPSON."

These issues were submitted:

1. "Is the plaintiff the owner and in possession of the land described in the complaint?" Answer: "Yes."

2. "Did defendants Walter and M. H. Jackson negligently kindle the fire that burned the lands of the plaintiff, as alleged in the complaint?" Answer: "Yes."

3. "Did the defendant Roanoke Railroad and Lumber Company, its agents, servants or employees, negligently kindle the fire that burned the lands of the plaintiff, as alleged in the complaint?" Answer: "Yes."

4. "What damage, if any, is the plaintiff entitled to recover in this action?" Answer: "Thirteen hundred dollars."

From the judgment rendered all the defendants appealed.

*Wooten & Clark* for plaintiff.

*Skinner & Whedbee, Moore & Dunn* and *Galloway & Albritton* for defendants.

BROWN, J.   It is unnecessary to consider all the errors assigned, as they may not arise on another trial.   Two errors assigned in the record we think are fatal to the judgment rendered.

1. One of the tracts of land alleged to have been burned over was called the Williams land.   The defendants' counsel asked the plaintiff, on cross-examination, if the timber on that land was not owned by some one else at the time of the fire.   The question, upon objection by plaintiff, was excluded. In this we think his Honor erred.   We suppose the question was excluded upon the idea that defendants were attempting to prove title to land by parol.   We do not take that view of it.   The record states that the defendants "admitted in open court that the plaintiff was the owner and in possession of the land upon which the trespass was alleged to have been committed."   The plaintiff had been examined in his own behalf as to the extent of his damage, and a part of his damage, he claimed, arose from the burning of the timber on the Williams land.   On cross-examination it was competent to ask him if some one else did not own the timber on that land—in other words, had he not sold it.   It was a direct impeachment of the estimate of damage plaintiff had testified to on his examination in chief.   Had the defendants offered parol evidence, by a witness other than the plaintiff, for the purpose of proving a sale of the timber by plaintiff, a different proposition would be involved.

2. It is admitted that the defendant Roanoke Company owned certain timber in Greene and Pitt counties, and that the codefendants Jackson Bros. were cutting and removing it for the company.   During the trial a certain contract, dated 1 February, 1905, entered into between the Roanoke Company and Jackson Bros. was put in evidence by defendant

Roanoke Company for the purpose of exonerating them from liability by showing that Jackson Bros. were independent contractors and not its agents. The defendant Roanoke Company moved to nonsuit, and also requested the court to charge the jury: "That upon the evidence in this case the defendants W. R. Jackson and M. H. Jackson were, at the time of the injury alleged in the camp limit, independent contractors in the logging and operating of the railroad, and defendant Roanoke Railroad and Lumber Company would not be in anywise liable for the conduct or act of either of the Jackson Bros. concerning such operation." His Honor refused to give this instruction prayed for, and defendants excepted.

A very careful examination of the record discloses no evidence whatever as to the relation existing between these defendants, except the written contract under consideration, and as to that the court charged: "That the paper-writing introduced by the defendants, termed a contract, between Jackson Bros. and the defendant corporation, does not make Jackson Bros. independent contractors, but you can consider such contract in passing upon the liability of defendant company, as to whether they (Jackson Bros.) were independent contractors." Defendants excepted.

It is patent that, if as matter of law this paper-writing does not make Jackson Bros. independent contractors, as charged, his Honor erred in telling the jury that "You can consider such contract in passing upon the liability of defendant company, as to whether Jackson Bros. were independent contractors"; for it is elementary that where the language of a contract is free from ambiguity its construction is for the court and not for the jury. The ruling of which the Roanoke Company may justly complain, however, is in the construction the Judge himself placed upon the instrument. In our opinion, according to its terms, Jackson Bros. held the relation of independent contractors engaged in the cutting and removal of the timber of the Roanoke Company. There is nothing

in the language of the instrument by which Jackson Bros. are made the servants of the Roanoke Company, employed to superintend the work of cutting and removing the timber. Jackson Bros. come clearly within the recognized definition as to what constitutes an independent contractor. An independent contractor is one who undertakes to produce a given result, but so that in the actual execution of the work he is not under the order or control of the person for whom he does it, and may use his own discretion in things not specified. Pollock on Torts, 78; Barrow on Neg., 160.

The law is well stated in *Young v. Lumber Co.*, 60 S. E. Rep., 656, a case strikingly like this, and by which it is controlled. *Mr. Justice Connor,* speaking for the Court, says: "When a contract is for something that may be lawfully done, and it is proper in its terms, and there has been no negligence in selecting a suitable person in respect to it, and no general control is reserved, either in respect to the manner of doing it, and the person for whom the work is to be done is interested only in the ultimate result of the work and not in the several steps as it progresses, the latter is not liable to third persons for the negligence of the contractor as his master."

We think the Judge below should have sustained the motion to nonsuit as to the Roanoke Company, and it is so ordered. As to the defendants Jackson Bros., we award a

New Trial.