McBRIDE *v.* JERRY MADDEN SHINGLE CO.

1. MASTER AND SERVANT—CONTRACT—EXISTENCE OF RELATION.
   The general rule is that the relation of master and servant does not exist if the person employed is in the exercise of a distinct, independent employment, and not under the immediate control, direction, or supervision of the employer; it exists wherever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished.[1]

2. SAME—NEGLIGENCE.
   Plaintiff sent his team and driver to work for a contractor, who was lumbering for defendant company under an agreement creating the relation of independent contractor. After working for some time under the contractor's direction, the driver was ordered by him to haul logs out on the frozen surface of a lake, to strengthen the ice. Defendant's overseer, arriving at the lake, assisted the teamster to load poles, and made several tests to determine the strength of the ice, assuring the driver of its safety. Defendant paid his wages and paid for the use of the team, upon the order of the contractor, who had charge of the team and driver and controlled them. At the direction of the contractor the driver placed a load of poles further out than he had theretofore done, and the team broke through the ice and were drowned. *Held,* that the relation of master and servant did not exist between defendant and plaintiff's teamster.

Error to Chippewa; Oren, J. Submitted October 18, 1912. (Docket No. 153.) Decided December 17, 1912. Rehearing denied March 20, 1913.

Case by John McBride against the Jerry Madden Shingle Company for the loss of a team by reason of defend-

[1] The authorities on the question as to what persons are deemed to be independent contractors are reviewed in an elaborate note in 65 L. R. A. 447, and in a supplemental note in 17 L. R. A. (N. S.) 371.

On the general rule as to absence of liability for acts of independent contractor, see note in 65 L. R. A. 622.

ant's negligent act.   Judgment for plaintiff.   Defendant brings error.   Reversed, new trial denied.

*F. T. McDonald,* for appellant.

*M. M. Larmonth,* for appellee.

Kuhn, J.   The plaintiff, being the owner of a team of horses, in the fall of 1909, sent them with a driver, Samuel Hewitt, to Trout Lake, in Chippewa county in this State, to work for Julius Brandt, who had a contract with the defendant company to cut and deliver certain timber at fixed prices on bank or on cars, as designated, near Trout Lake.   The contract was in writing and provided that the timber should be cut clean, manufactured in a workmanlike manner, and delivered before April 15, 1909.   The time for completing the contract was extended by the defendant, and all the work done by Brandt from 1908 until the spring of 1911 was done under this contract.   Some changes were made, by mutual consent, as to the place of delivery; but in 1909–10 the route for hauling the logs was to Trout Lake, and, in order to get the logs to the banking grounds at this place, Brandt made a road and attempted to cross a small lake, approximately 40 rods wide which was frozen and covered with ice at the time.

On January 10, 1910, the driver, Hewitt, with plaintiff's horses, was working under Brandt's orders and directions in plowing the road down to the lake.   In the forenoon of that day, Brandt and Hewitt walked out on the ice so as to ascertain if it was strong enough to haul logs across.   Holes were cut with an ax every 15 or 20 rods, and some weak places were found in the center of the lake.   In the afternoon, Brandt told Hewitt to haul some logs, so as to pole the lake, by which means it was intended to make the weak spots on the ice safe, by allowing the poles to freeze in solid.   While this work was going on, Timothy P. Cullnan, who was the overseer of the woods operations of the defendant company, appeared at the lake, and

Hewitt claims that he assisted him in loading poles on his dray and went on the ice, cut several holes, and assured him that the ice was safe at those places and showed him where to unload the poles. It is also claimed by Hewitt that Brandt said he would not cross the ice without instructions from Cullnan. Hewitt thereupon left to get a second load of poles and met Cullnan on the edge of the lake as he was coming back. He placed the second load at the point where he had left the first, and, it is claimed, as directed by Cullnan. Cullnan did not return, and Hewitt, after delivering the second load, went after a third, which he placed about 15 feet farther out in the lake, under direction of Brandt, and then went after a fourth load, which he attempted to place still farther out, also under direction of Brandt, whereupon the team broke through the ice and were drowned. Suit was brought against the defendant company for the value of the horses. It was the claim of the plaintiff on the trial of the case below, and it is urged here, that the defendant company's walking boss assumed and exercised such authority over the driver and team of the plaintiff and gave the driver such assurances as to the condition of the ice as to create the relationship of master and servant between the defendant company and the driver. This brings us to a discussion of what is the all-important question in this case.

It is an undisputed fact that in the ordinary relationship Brandt was an independent contractor. There was no provision in the contract reserving to the defendant company the right to control the details of the work. The company had no right to interfere with the manner of doing the work, or to assume direction of it as long as Brandt was able to do it; the only provision in the contract with reference thereto being:

" It is further agreed and distinctly understood that should the said Julius Brandt, through sickness, disability, death or any other cause be unable to properly look after and manage the said work, then the parties of the first part shall have the right to take charge of said work

and carry out the terms of this agreement at the cost and expense of the said Julius Brandt."

No claim is made of any such right to interfere on the part of the defendant company, and Cullnan stated:

" Brandt, himself, had the sole direction of cutting the timbers under his contract, and the hauling of it and placing it on the banking ground.

"Q. Did you have any work to do, or instructions from the company, with respect to that work?

"A. Why, no more than to go and look around and see how they were getting along."

The general rule has been repeatedly stated by the authorities that the relation of master and servant does not exist where the person employed is in the exercise of a distinct, independent employment and *not under the immediate control, direction, or supervision of the employer. De Forrest* v. *Wright,* 2 Mich. 368. This case has been repeatedly cited and the supreme court of Massachusetts in *Linton* v. *Smith,* 8 Gray (Mass.), 147, declared it to be a well-considered case.

The relation of master and servant exists wherever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done. 26 Cyc. p. 966.

Can it be said that at the time of the accident Hewitt was under the immediate direction and control of the defendant's representative?

The record discloses that Cullnan was not at the scene at that time and that Brandt was actually supervising the work. Hewitt testified:

"I was working for Mr. Brandt. Mr. Brandt fixed my wages. Mr. Brandt hired me and also hired this team that was lost. He told me what he would pay me.

" Q. And you took orders from Brandt as to what you were to do?

" A. Yes, up to that time.

" Q. And you knew that he was your boss, and no one else?

"*A.* Yes, he gave me orders.

"*Q.* You were not working for the Jerry Madden Shingle Company?

"*A.* No, sir.

"*Q.* And you received no instructions from the Jerry Madden Shingle Company with respect to your work, when you went to work there for Brandt?

"*A.* No, sir; only to get my pay.

"*Q.* And you got your pay from the Jerry Madden Shingle Company on orders issued by Brandt?

"*A.* He gave us our time; yes, sir.

"*Q.* And you would go to the Jerry Madden Shingle Company to get paid?

"*A.* Yes, sir.

"*Q.* You knew you were hired by Brandt, and that you were subject to his instructions?

"*A.* Yes, sir.

"*Q.* And you knew that he was the man to let you go, and tell you when when your work was done?

"*A.* Yes, sir.

"*Q.* And to let you know if the work was done satisfactorily?

"*A.* Yes, sir.    *    *    *

"*Q.* Had you left the employment of Brandt and become employed by the Jerry Madden Shingle Company that morning?

"*A.* No, sir.  The walking boss gave the orders that morning.

"*Q.* Did you change your employment that morning?

"*A.* I didn't know.  The walking boss is the man that gave the orders, anyway.  I had not quit working for Brandt.    *    *    *    I put the first and second loads at the same point, and the third 15 feet further out as directed by Mr. Brandt.  I had to drive the horses 15 feet further out.  The ice was just as good there as where I was.  The men were working alongside where the poles were left, making a road.  They were poling the ice at the right-hand side of where I put the poles.  After unloading these poles, I went back and got another one.

"*Q.* Now, you came out with the fourth load, and where did you put that load?

"*A.* Brandt told me to put it a little piece further ahead.

"*Q.* And how far did you go with it?

"*A.* I went ahead about 20 or 25 feet.

"*Q.* Further on than the third load of poles?

"*A.* Yes, sir.

"*Q.* And you started to unload them?

"*A.* No, sir; the team went through the ice."

Defendant did not hire the driver and had no power to discharge him. It stood in no sort of contractual relation with him. In the case of *Riedel* v. *Moran, Fitzsimons Co.*, 103 Mich. 262 (61 N. W. 509), the doctrine laid down in *De Forest* v. *Wright, supra*, is reaffirmed. See, also, *Reier* v. *Spring Works*, 109 Mich. 244 (67 N. W. 120); *Burns* v. *Paint Co.*, 152 Mich. 613 (116 N. W. 182, 16 L. R. A. [N. S.] 816); *Larsen* v. *Telephone Co.*, 164 Mich. 295 (129 N. W. 894). In our opinion, Cullnan, by the acts testified to by plaintiff's driver, Hewitt, did not assume such immediate control and direction of the work of building the road across the lake as to create the relationship of master and servant between the driver and the defendant company at the time of the accident.

The trial judge should have directed a verdict for the defendant at the close of the proofs, as requested by defendant's counsel. It is unnecessary to consider the other assignments of error.

The judgment is reversed, and no new trial granted.

Moore, C. J., and Steere, McAlvay, Brooke, Stone, Ostrander, and Bird, JJ., concurred.