R. P. VOGH v. F. C. GEER COMPANY, WELLS BROTHERS COMPANY, ET ALS.

(Filed 24 May, 1916.)

**1. Contracts—Independent Contractor.**

Where a contractor for the erection of a five-story building enters into a contract with another to construct all the steel and iron work for the building, employing his own artisans and having entire charge of the steel and iron works to be constructed in accordance with the plans and specifications of the architect, the latter is an independent contractor and not an employee of the former.

**2. Same—Contractor Furnishing Implements.**

The relation of independent contractor for the iron and steel work in a building is not affected by the fact that the subcontractor had agreed with the original contractors that the latter would allow him the use of a guy derrick and engine and plank necessary to be used in the erection of the iron and steel work, to be kept in good condition and returned accordingly, the repairs or replacements to be done at the cost and risk of the subcontractor, who assumed all responsibility in the operation and use of this equipment and plank.

**3. Contracts—Independent Contractor — Negligence — Liability — Dangerous Work.**

The rule that work intrinsically dangerous may not be let out by independent contract so as to avoid responsibility for consequences does not ordinarily apply to the collateral negligence of the contractor; and where the steel and iron work of a building is to be erected by an independent contractor, and an employee of the latter is injured by the breaking of a plank furnished for him to stand on while at work, caused by an imperfection or knot hole in the plank, neither the owner nor his contractor is held responsible for the sole negligence of the subcontractor, if established.

**4. Contracts—Independent Contractor—Negligence—Dangerous Work — Implements—Inspection—Trials—Instructions.**

A contractor to erect a five-story building let out, by independent contract, the steel and iron work therein, and while an employee of the independent contractor was at work, standing on a defective plank furnished for the purpose, the plank broke and he fell and received the injury complained of, and brought his action against the original contractor for his consequent damages. There was evidence tending to show that these plank were furnished at the request of the independent contractor on the order of the contractor upon a reliable manufacturing plant; that they were of average grade and quality; that it was the duty of the independent contractor to have inspected them, and the privilege of the plaintiff to have done so under the rules of an association of which he was a member, and that he helped to place the plank which caused his injury: *Held*, an instruction to the jury was reversible error which made the liability of the defendant contractor to depend solely upon his care in inspecting the plank, leaving out of consideration the duty of the independent contractor and the plaintiff to have done so.

**6. Same—Fellow-Servant Act—Assumption of Risks.**

In this action to recover damages by an employee of an independent contractor, brought against the original contractor, the defendant's liability being dependent upon the question of whether the duty of inspecting certain defective plank had properly been observed by the independent contractor of the plaintiff, it is *Held*, the doctrine of the fellow-servant act and of assumption of risks do not arise.

HOKE, J., concurs in the result.
CLARK, C. J., dissents.

CIVIL ACTION, tried before *Devin, J.*, at January Term, 1916, of DURHAM; upon these issues:

1. Was the plaintiff injured by the negligence of the defendant, Wells Brothers Company of New York, as alleged in the complaint? Answer: "Yes."

2. Did the plaintiff by his own negligence contribute to his injury, as alleged in the answer? Answer: "No."

3. Did the plaintiff voluntarily assume the risk and danger of being injured in the manner in which he was injured, as an incident of his employment? Answer: "No."

43—171

4. What damages, if any, is the plaintiff entitled to recover? Answer: "$15,000."

*Fuller & Reade for plaintiff.*
*W. G. Bramham for defendant Wells Brothers.*

BROWN, J. This is an action brought to recover of the defendant Wells Brothers Company damages for an injury sustained by the plaintiff. The F. C. Geer Company is named as defendant, but no recovery is sought as to them. The firm of Soper & McDonald is also named as defendant, but they have not been served with process and are not parties to the action.

The Geer Company entered into a contract with the defendant Wells Brothers Company to erect a five-story building in the city of Durham in accordance with the plans and specifications of the architect. This defendant thereupon entered into a contract with Soper & McDonald, construction steel and iron contractors, in a written contract set out in the record. Under the terms of this contract Soper & McDonald undertook to construct all the steel and iron work for the building, employing their own artisans and having entire charge of the steel and iron work to be constructed in accordance with the plans and specifications of the architect. It is plain that according to this contract Soper & McDonald were independent contractors, and also, upon all the evidence, that the plaintiff was their servant exclusively. *Young v. Lumber Co.,* 147 N. C., 26; *Gay v. R. R.,* 148 N. C., 336; *Beal v. Fiber Co.,* 154 N. C., 147.

The added circumstance that the Wells Company allowed Soper & McDonald to use their derrick and engine, and loaned them plank for covering the girders temporarily during the erection of the building, cannot have the effect to change their relationship, nor does it establish the relation of master and servant between the Wells Company and the plaintiff. *Emerson v. Fay,* 94 Va., 60; *Gay v. R. R., supra.*

That portion of the contract which is material is in these words: "It is understood that party of the first part will allow party of the second part use of one guy derrick and engine, together with the plank necessary to cover over during erection, all of which is loaned at the risk of party of the second part, and is to be returned to party of the first part in first-class condition and to be maintained and kept in good order by party of the second part until its return to party of the first part. Any repairs or replacements to be done at the cost and risk of party of the second part. It is further agreed and understood that party of the second part assumes all responsibility in the operation and use of this equipment and plank. It is also agreed and understood that the above

mentioned guy derrick, engine, and plank will be delivered f. o. b. cars, Durham, N. C., by party of first part to party of the second part."

It is to be noted that Soper & McDonald, the parties of the second part, assumed all the responsibility in the operation and use *"of the equipment and plank furnished them by the Wells Company."* The evidence tends to prove that the plaintiff was employed by Soper & McDonald as a steel and iron worker. On 21 October, 1914, plaintiff was working on the fourth floor of the building. The temporary plank had been laid down across the girders for the workmen to stand on. One of the planks had a knot in it that broke and caused the plaintiff to fall to the lowest floor of the building, in consequence of which he was severely injured.

The evidence tends to prove that all the planks used for temporary covering were furnished by the Cary Lumber Company of Durham upon the order and for the account of Wells Company. They were delivered at the building by the wagons of the lumber company. When Soper & McDonald needed any of these boards, their superintendent, Engler, would advise the defendant's superintendent, Holloway, and the latter would phone the Cary Lumber Company the order. No planks were ordered other than those requested by Engler.

On arrival of the planks at the building, Engler would take charge of them and he and the other employees of Soper & McDonald, including the plaintiff, would hoist the planks by means of a derrick either direct from the lumber wagons or in some instances from the ground (where a large number of them had been piled), into the building, and would lay the planks across the girders for temporary flooring.

The evidence tends to prove that none of the employees of the Wells Company had anything to do with the planks after they reached the building. Nor did they have anything to do with unloading them from the wagons, putting them in the building, or laying the floors. Soper & McDonald did all of that.

The evidence shows that all of these planks were new and of the same character. A large number of them had knots in them, all were of the dimensions customary for such work, and were used and placed in the usual way. The evidence shows that the employees of Soper & McDonald, themselves, selected such planks as they desired and elevated them to that part of the building where they were needed, and that the use to be made of these planks and what particular planks should be laid at any particular point was left to the employees of Soper & McDonald to determine.

There is evidence tending to prove that plaintiff was a member of the Structural Steel and Iron Workers' Union, and that the rules of that union require that no one handle these covering planks except the steel workers themselves. While this is not admitted by the plaintiff, there

is evidence tending to prove it, and that in the work on the Geer building the rules and customs of the Steel and Iron Workers' Union were observed.

The plaintiff and his witnesses testify that the plank which broke with him contained a knot which caused the plank to break, and that there were knots in practically all of the planks they were using, but that there were no defects in this particular plank apparent to him. Plaintiff, himself, testified that he did not make any request for more plank or for any different plank, and that he made no complaint to any one when he noticed that nearly all of the planks had knots in them. Plaintiff further testified that the fact that the planks had knots in them would not make them necessarily dangerous for the work he was engaged in, nor would the matter of the thickness of the plank, but the danger would be controlled by the size of the knot.

It is insisted that the Wells Company are liable for the negligence of Soper & McDonald, upon the theory that this kind of work is what is called "intrinsically dangerous," such as blasting with dynamite and the like. According to that contention, the Geer Company, the owner of the building, would be liable as much so as the Wells Company; but the work contracted for was not of the kind described in any of the cases wherein the owner is held liable for the contractor's negligence upon the ground of inherent danger. The work contracted for here was the erection of an ordinary concrete building, hundreds of which are being constructed in this country every day. The plaintiff was an experienced artisan in that kind of work.

We find no precedent that holds that this work is of that character which the policy of the law requires that the owner shall not be permitted to free himself from liability by contract with another for its execution. *Brogden v. Perkins,* 66 L. R. A., 924; *Lafferty v. Gypsum Co.,* 83 Kan., 349; *Boomer v. Wilbur,* 176 Mass., 482.

The rule in regard to "intrinsically dangerous" work is based upon the unusual danger which inheres in the performance of the contract, and not from the collateral negligence of the contractor. Mere liability to injury is not the test, as injuries may result in any kind of work where it is carelessly done, although with proper care it is not specially hazardous. Therefore, it is held that the erection of a building is not within the undertakings called specially hazardous. *Richmond v. Sittending,* 101 Va., 354.

We think, however, that there was error in the charge of the court which entitled the defendant to a new trial.

There is evidence which tends to prove that Wells Brothers, the general contractors, sublet the structural steel work to Soper & McDonald, agreeing to allow them the use of a derrick and engine and the plank to cover over during erection, Soper & McDonald assuming all responsi-

VOGH *v.* GEER.

·bility in the use and operation of the equipment and plank; that the plaintiff was employed by Soper & McDonald, and was injured while in this employment by stepping on a defective plank; that Wells Brothers Company placed the order for plank, when needed, with a reliable manufacturing plant, which furnished lumber of average grade and quality; that the manufacturing plant delivered the plank at the building to Soper & McDonald, whose duty it was to inspect the plank and to reject any found defective; that the plaintiff was working under the rules of a union, of which he was a member, which made it a part of the contract of employment that the employee should have the right to inspect all materials furnished him, and to refuse any that was defective; that the plaintiff helped to place the plank which caused his injury.

If this evidence is true, the defendant has performed its duty, and is not negligent, and this phase of the case was not presented to the jury.

On the contrary, the jury was told, in substance, that the issue of negligence could be answered "Yes" if the defendant did not use ordinary care in selecting the plank, leaving out of consideration that it was furnished subject to acceptance and inspection by Soper & McDonald and the plaintiff.

It is unnecessary to discuss the fellow-servant doctrine or that of assumption of risk. Those questions do not arise in this case. In our opinion its proper determination depends on whether the duty of inspecting the flooring rested on the plaintiff and the subcontractors, Soper & McDonald, or on the Wells Company. Upon that proposition there is evidence which should be submitted to the jury under proper instructions.

New trial.

HOKE, J., concurs in result.

CLARK, C. J., dissenting: This is an action for personal injuries against F. C. Geer & Co., Wells Brothers Company, and Soper & McDonald. F. C. Geer & Co., owners of the lot in Durham, contracted with Wells Brothers Company to erect a five-story building in Durham in accordance with the plans and specifications of the architect.

Wells Brothers Company contracted with Soper & McDonald to construct all the steel and iron work of the building, Wells Brothers Company agreeing to furnish the plank for covering the girders during the erection of the building, and a derrick and engine.

The defendants Wells Brothers Company as general contractors were in general and active charge of the building, supervising the subcontractors, to see that the work was done according to the plans and specifications, and, besides, they had agreed to furnish the necessary plank and the engine and derrick to use in the work of erection. These planks

were laid between two girders, 16 feet apart; the laborers in the course of their employment had to stand thereon. One of the planks, furnished by Wells Brothers Company for that purpose, was a perfect plank on the top side, which alone was visible to the plaintiff, but on the bottom side there was a knot running diagonally across the plank. This knot extended not only entirely across the plank, but went almost through its entire thickness, but could be seen only on the bottom side. The plank, which was therefore no stronger than the thickness between the knot and the upper side of the plank, broke when the plaintiff stood upon it, precipitating him four stories to the bottom of the building, whereby he was frightfully and fearfully injured. It is not denied that this defect was undiscoverable from the upper side of the plank by the plaintiff when he went out upon it for the purpose of doing his work, and the jury properly found that the plaintiff was not guilty of contributory negligence. There seems no controversy that the plank was defective, and that by its breaking the plaintiff was injured.

It is true that as between the contractor and the subcontractors it was agreed that the latter were to take the risk of the plank. But this did not relieve Wells Brothers Company of the responsibility to the employees, as it was their duty to furnish the plank. As between the contractors and subcontractors, the latter were liable to the former; and it is also true that the plaintiff, whether the contract had or had not contained that provision, could in any event have held the subcontractors liable. Both, however, were liable to the plaintiff, since Wells Brothers Company were in charge of the entire work to supervise its execution, and had also agreed to furnish the plank.

The plaintiff was entitled to a lien upon the contractors in chief for the wages due him by the subcontractors, and he was equally entitled to rely upon the carefulness of the contractors in chief in furnishing the plank to the subcontractors to enable the workmen to prosecute their work. It does not appear in this case that the obligation of inspection was reserved to the subcontractors who employed the plaintiff, and it is immaterial. The general rule is that where the master (the contractor in chief) furnishes the platform, scaffolds, and supports for the use of the employees, he is liable for ordinary care and to see that they are reasonably safe. 26 Cyc., 1115. The defect here was not an improper construction by the subcontractors of the scaffold, or the floor upon which the plaintiff stood, but his injury was due solely to the defect in the plank which was furnished by Wells Brothers Company under their contract, and the defect therein should have been easily seen by Wells Brothers Company before delivery of the same to the subcontractors. The contract between them, that the subcontractors were to take the risk of defective plank, was a matter between them,

and did not relieve Wells Brothers Company of their primary liability to the employee, who, knowing that Wells Brothers Company were in entire charge and supervision of the building and were to furnish the plank for the workmen to stand on, could look to them for this defect in such plank which caused the serious injury. The plaintiff can hold them to liability for the legal consequence of these facts, whether he knew them at the time or not.

As to the defense that the negligence was that of a fellow-servant in laying this defective plank between the girders, it is sufficient to cite *R. R. v. Peterson,* 162 U. S., 346, where *Peckham, J.,* said (as quoted in *Steele v. Grant,* 166 N. C., 645):

"The general rule is that those entering into the service of a common master become thereby engaged in a common service and are fellow-servants, and *prima facie* the common master is not liable for the negligence of one of his servants which has resulted in an injury to a fellow-servant. There are, however, some duties which a master owes, as such, to a servant entering his employment. He owes the duty to provide such servant with a reasonably safe place to work in, having reference to the character of the employment in which the servant is engaged. . . . If the master be neglectful in any of these matters, it is a neglect of a duty which he personally owes to his employee, and if the employee suffer damage on account thereof, the master is liable. If, instead of personally performing these obligations, the master engaged another to do them for him, he is liable for the neglect of the master to do those things which it is the duty of the master to perform as such." To same purport *Avery v. Lumber Co.,* 146 N. C., 592; *Tanner v. Lumber Co.,* 140 N. C., 475.

After the battle of Waterloo, in 1815, when England terminated the twenty-five years struggle with France, she did not give pensions to the soldiers disabled in that contest or subsequently destitute (notwithstanding the peerages and enormous sums granted to a few generals), but in lieu thereof rewarded them by a "permission to beg" if found needy and deserving, coupled with a provision that if any soldier should beg without such permission from his commanding officer, or of some court, he should be hanged. The attitude as to the "soldiers of industry," the laborers upon whose exertions civilization rests, has also changed very slowly. It was long held by the courts that when a laborer was injured, though he might be one of many thousands in a common employment, yet if any other laborer was in any wise guilty of negligence which contributed to the injury of the laborer, the employer was not liable. It was first pointed out in this State by the opinion in *Hobbs v. R. R.,* 107 N. C., 1 (in 1890), that this doctrine had been created by the courts and not by any statute. Thereafter, doubtless in consequence

of that decision, the General Assembly enacted Private Laws 1897, ch. 56 (for some reason, never explained, this statute was put in the *Private Laws* of that session), which is now Revisal, 2646, which repealed the doctrine as to railroad employees and also deprived the defendant in such cases of the defense that the employee "assumed the risk." This statute was before the Court on several occasions, but was settled finally in favor of its constitutionality in *Coley v. R. R.*, 128 N. C., 534, reaffirmed on rehearing 129 N. C., 407 (though two judges dissented), and has ever since been held valid in this State. The modern and just doctrine that when there are large numbers of employees the "business shall bear the loss" from injury to an employee, and that the whole burden shall not fall, as heretofore, with crushing effect upon the unfortunate employee and his dependent family is now the attitude of the law as it has been expressed by legislation, and later by the courts.

As to railroad employees, the Federal statute, as well as our State statute, now provides that even if the employee of a railroad company has been negligent himself, he shall not bear the entire loss of the injury, but that it shall be apportioned by the jury in proportion to the negligence respectively of the employer and the employee. In many States "Employers' Liability" acts have been passed, making similar provision as to any injuries sustained by a laborer when more than a certain number of employees are engaged in a common work.

In this case there was no evidence of either contributory negligence or assumption of risk by the laborer, and the jury have so found. The evidence is solely of negligence on the part of Wells Brothers Company, who furnished a defective plank upon which the plaintiff, attempting to stand, was precipitated four stories and was fearfully injured. The subcontractors are also liable to the plaintiff, because they should have inspected the plank, notwithstanding it had been furnished by Wells Brothers and they had agreed with Wells Brothers Company that they would be primarily liable for such defect. But that did not relieve Wells Brothers Company, who had supervision of the work and who agreed to furnish the plank for such use by the employees of the subcontractors, from themselves making such inspection.

The plaintiff, working for a living for himself and family, had no opportunity to require, and could not be expected to run the risk of dismissal if he had required, Wells Brothers Company to agree to furnish him with a safe place in which to work and a safe plank on which to stand lest he should be precipitated four stories to his death or great bodily harm. He had a right to rely upon the fact that Wells Brothers Company were the contractors over the whole work and had also especially agreed to furnish the plank on which he and his fellow-laborers should work when suspended on the iron girders at a giddy

and dangerous height, precipitation from which would entail death or terrible injury.

In Mechem on Agency, sec. 666, it is said: "If the principal was, by the terms of the contract, under obligations to the contractor to furnish the necessary machinery or appliances, or to supply a portion of the labor, he would be liable to the servant or agent of the contractor for an injury sustained by reason of his neglect to use due and reasonable care in selecting and supplying the proper machinery or appliances."

In *McCall v. Steamship Co.*, 123 Cal., 42, 10 L. R. A., 696, the defendant made the same contention as in this case, that there was no contractual privity between it and the plaintiff, who was the servant of the contractor, to whom it agreed to furnish certain tackle for unloading a cargo, and therefore did not owe him any duty. The Court in disposing of that proposition said: "But the rule is too firmly settled to be open to successful attack that where one agrees to furnish to a contractor material or appliances which he is to use in the performance of his tasks, the principal is liable to the servants and agents of the contractor for injuries which may result to them from his negligent or inadequate performance of his contract in this regard. *The liability is not based upon the relationship of employer and employee, but it is construed by some of the courts that the contract is made with the contractor for the benefit of his employees, who have, therefore, their right to a recovery for any breach of it which results to their injury.* By other courts the contractor is considered to be the dependent agent of his employer in these respects, and the doctrine of *respondeat superior* is brought into application. . . . But however that may be, the principle itself is settled beyond possibility of successful contradiction."