392 So.2d 1138 (1981)
LEAF RIVER FOREST PRODUCTS, INC.
v.
B. Alton HARRISON.
No. 52327.
Supreme Court of Mississippi.
January 21, 1981.
*1139 R. Web Heidelberg, R.W. Heidelberg, Heidelberg, Sutherland & McKenzie, Hattiesburg, for appellant.
James A. Becker, Jr., Watkins & Eager, Jackson, for appellee.
Before ROBERTSON, BROOM and HAWKINS, JJ.
BROOM, Justice, for the Court:
Respondeat superior highlights this tort action appealed from the Circuit Court of Scott County. There plaintiff B. Alton Harrison won a $433,000 jury verdict and judgment for severe personal injuries he received when his car, driven by him, collided with a log truck driven by Hartis Donald, an employee of defendant Claude McDonald d/b/a C & D Logging (McDonald herein). Theory of plaintiff's case is that McDonald was the employee-servant of defendant/appellant Leaf River Forest Products, Inc. (Leaf River herein) at the time of the accident thereby making Leaf River vicariously liable for the negligent acts of McDonald's driver. Chief issue is whether the evidence was sufficient to make out a jury issue of respondeat superior.
Before daylight, May 2, 1978, Hartis Donald was operating McDonald's log truck on Highway 35 in Scott County near Homewood headed South and attempting to back the rig into a woods road which intersects the highway. Because he passed the intersection a short distance, he had to back the trailer into the woods road. While backing up, the trailer jack-knifed across Highway 35 about the time that plaintiff Harrison came over a hill about one-fourth mile South of the truck. Realizing he could not get his logging rig off the highway before the oncoming (Harrison's) car arrived, McDonald's driver got out on the gas tank of the truck and with his hands attempted to flag Harrison. Apparently the truck's headlights were directed southerly along Highway 35 and blinded Harrison as he headed North. Harrison crashed into the truck's coupling pole which extended across the highway. There were no flares, flashing lights or warning devices to put Harrison on notice that the highway was blocked. Harrison was grievously and permanently injured, and no argument is made that the $433,000 verdict is excessive. McDonald's insurance carrier paid $102,525, its policy limits, to the plaintiff. Other facts will be stated where appropriate herein.
Leaf River took the position below and here that Claude McDonald was an independent contractor, and therefore Leaf River could not be vicariously liable for the negligence of Hartis Donald, driver of McDonald's log truck. Plaintiff Harrison took the position that McDonald was not an independent contractor but an employee of Leaf River. The issue of whether McDonald was an independent contractor or employee-servant of Leaf River was submitted to the jury which found against McDonald and Leaf River. Only Leaf River appeals.
*1140 McDonald for many years has been a large operator in the business of logging. Leaf River neither cuts nor hauls logs but has a sawmill operation where it manufactures lumber. McDonald owns his equipment including trucks, trailers, loaders, skidders, saws and related items. Leaf River has its own sawmill equipment and since it began operating in 1977 has bought logs from various logging contractors across central and south Mississippi. About fifteen months prior to the accident in which plaintiff was injured, McDonald was hauling timber for Leaf River and (though in lesser amounts) for other mills: Masonite, St. Regis, Scott Paper, and Crown-Zellerbach. He continued to cut and haul timber for Leaf River after the accident. He goes from one job to another with Leaf River when they have timber available. Leaf River paid McDonald on a weekly basis according to unit volume of production; and such payments totaled $165,449 in 1977 and $310,552 in 1978. During 1977 and 1978, McDonald produced and sold from tracts to others which had no connection with Leaf River. He purchased some hardwood from Leaf River and sold it on his own to other mills which was the case on the tract being cut when the accident occurred. Leaf River gets approximately fifty percent of its logs from timber it purchases and the remainder from contractors who purchase and sell to Leaf River. McDonald and the other contractors doing business with Leaf River, while contracting with Leaf River, also purchase timber on their own.
For each timber tract which Leaf River purchases, there is a contract governing the cutting and hauling. Using a "logging cost analysis" sheet basis, the price payable is computed in the field. The contract involved in this case designates McDonald as an independent contractor not subject to Leaf River's control. According to the contract, hiring, firing, paying, and controlling of McDonald's employees is vested in him. Further, it provides that he will carry his own insurance: workmen's compensation and public liability. In his cutting and hauling from tracts other than those of Leaf River, McDonald did not execute written contracts.
Timber to be felled by McDonald was marked by Leaf River whose forester, Ray Sims, sometimes once a week, sometimes once a month, inspected to see if the proper timber was being cut at prescribed heights. Sims never supervised the details of how the loggers did the actual timber cutting. If trees were missed, Sims would tie ribbons around them and ask McDonald to return and cut them. If Sims complained about trees being cut too high or too low, McDonald would try to adjust his cutting accordingly.
In deciding whether the plaintiff made out a jury issue as to respondeat superior, both parties agree that we accept as true all testimony and reasonable inferences favorable to the plaintiff. Hobbs v. International Paper Company, 203 So.2d 488 (Miss. 1967). In workmen's compensation cases we liberally construe the evidence in favor of the claimant in order to carry out the beneficent purposes of the act. Significant in cases like the case now before us is the contract executed by McDonald and Leaf River. Hutchinson-Moore Lumber Co. v. Pittman, 154 Miss. 1, 122 So. 191 (1929) states:
The contract between appellant and Magee fixed the relationship between the latter and the former, and that relationship was not one of master and servant, but instead, under the plain provisions of the contract, Magee was an independent contractor.
(122 So. at 193).
Here the applicable contract between McDonald and Leaf River consists of four typewritten pages and a "logging cost analysis" sheet. The contract states the various factors which are considered in order to come up with the per ton price which is entered upon the contract itself before the parties sign it.
Excerpted from the contract before us are the following provisions:
8. CONTRACTOR shall select and pay his own agents, servants, employees, *1141 for the performance of the duties assigned by him to them in the performance of this contract. Such agents, servants and employees shall not be subject to any orders, directions or control of LEAF RIVER, but shall receive instructions from and be solely responsible to the CONTRACTOR. No relationship of master and servant shall exist between LEAF RIVER and the CONTRACTOR, or between LEAF RIVER and any agent, servant, employee of the CONTRACTOR and LEAF RIVER shall have no right to control the time, manner or method of doing the work. LEAF RIVER shall, however, have the right to inspect CONTRACTORS operations hereunder for the sole purpose of determining whether or not such operations are being conducted in accordance with the terms and conditions of this contract... .
* * * * * *
10. Only by mutual consent, the performance of this contract may be suspended without penalty by either party during such time as either party is unable to perform because ... causes over which the parties have no control; ... if such stoppage shall continue for as long as 30 consecutive days, either party may, with the written consent of the other, terminate the contract without penalty or liability. (Emphasis added).
11. LEAF RIVER shall in no way be liable for any injuries or damage done or occasioned by the action and operation of CONTRACTOR under this contract, and CONTRACTOR binds and obligates himself to pay and satisfy any and all claims arising on account of his operations, of or caused by injuries to his employees or other persons or for damages resulting to any type of property, and to save and hold harmless LEAF RIVER on account of any such claims. (Emphasis added).
12. CONTRACTOR binds and obligates himself to carry:
(A) Workmen's Compensation Insurance fully covering CONTRACTOR'S operations hereunder.
(B) Public, Contractor's and Vehicular Liability Insurance covering fully the liability in connection with his operations in the amount of not less than $100,000-$300,0000 and Property Damage not less than $50,000 and, upon request, to furnish LEAF RIVER satisfactory evidence that such insurance is being carried.
According to the contract, McDonald had the right and obligation to hire, fire, and pay his own employees including his driver Hartis Donald who drove the log truck when plaintiff was injured. Further, the contract gave Leaf River no right of control over the time, manner or method of doing the work although it had the right to inspect to insure that McDonald complied with the contract. Another feature of the contract was that McDonald was required to carry his own insurance (workmen's compensation and public liability) out of which plaintiff here was paid $102,525. There is no proof or indication before us that the contract was a sham or a device employed as a scheme to contravene legal requirements pertaining to operational procedures of those in business.
As we have previously held, the contract is relevant on the issue of the legal relationship between Leaf River and McDonald, but there are other factors to be considered. Miss. Empl. Sec. Comm'n. v. Heidelberg Hotel Co., 211 Miss. 104, 51 So.2d 47 (1951); First Nat. Bank of Oxford v. Miss. Unemp. Comp. Comm'n., 199 Miss. 97, 23 So.2d 534 (1945). As we held in Hederman v. Cox, 188 Miss. 21, 40, 193 So. 19, 24:
[C]ourts must look at transactions in their actual character, piercing through the screen of technical attitudes to what are the realities, and must regard substance rather than formal similitudes.
Our decision in Kisner v. Jackson, 159 Miss. 424, 428-9, 132 So. 90 (1931) delineates factors to be considered in determining whether one is an independent contractor or employee; there we stated:
There are several tests to be applied, the weight of each, and whether much or little, rising and falling in the scale as it *1142 may or may not be counterbalanced by one or more of the remaining tests, present in the particular case in hand. For this reason these tests cannot be stated in any precise order of importance, but they are as follows: Whether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of the employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the subemployees and to fix their compensation; and whether he is obliged to pay the wages of said employees.
Here McDonald was a prudent operator to the extent that he carried public liability insurance from which the plaintiff has been paid over $100,000. Leaf River is not the type entity referred to by us in Hobbs v. International Paper Company, 203 So.2d 488, 490 (Miss. 1967) where we stated:
Where persons and firms put worn-out trucks into the possession of penniless persons, to be operated upon the heavy-laden highways of this state under the guise and legal fiction that such operators are independent contractors or timber buyers and sellers, when in fact and truth they are financially unable to buy gasoline or tags with which to operate the trucks, or even food for themselves, without obtaining advance funds, these facts and circumstances are for the jury's consideration, and may be the turning point in their deliberations.
Our study of the record reveals the following facts which strongly militate toward our holding, as we must, that McDonald was an independent contractor. Leaf River's logging supervisor Sims did not supervise any of McDonald's employees and did not communicate with them but dealt only with McDonald. Details of McDonald's work were not controlled or directed by Leaf River or its representative Sims. Timber cutters who cut for Leaf River were not moved from one tract to another and were not told by Sims or anyone representing Leaf River when or whether to work. McDonald's driver, Hartis Donald, was in no manner paid or given directions about his work by Leaf River; he was under the sole and exclusive control of McDonald. From time to time when extra help was needed by McDonald due to unforeseen circumstances, such help was obtained by McDonald at his discretion and expense without involvement of Leaf River. On the day of the accident Leaf River was without knowledge that Donald was driving for McDonald. McDonald supplied its own equipment and financing, and is as much an independent contractor as is possible in an instance where such a person or entity does a large volume of timber cutting for another.
Carr v. Crabtree, 212 Miss. 656, 671, 55 So.2d 408 (1951) was a logging case in which this Court held that the logger was an independent contractor and not "employee of Crabtree." The opinion authored by Justice Kyle deemed it significant that "Crabtree was interested only in the overall result of their (the loggers) work," and that the logger (as is true of McDonald herein) controlled the "physical management of the instrumentalities used, and the physical conduct of the workmen... ." Such is the case before us now.
Turner v. Williams, 257 So.2d 525 (Miss. 1972) is not controlling because of factual differences. In Turner, there was no written contract such as was present in the case now at issue. Another difference is that proceeds of the timber harvested were split among the owner, the laborer who did the physical work, and the timber consultant *1143 who arranged for and supervised the harvest of the timber.
In summary, the significant facts which, together with other circumstances presented, require our holding that McDonald was an independent contractor are the following: (1) Leaf River never supervised McDonald or McDonald's employees though there were inspections, (2) McDonald exclusively used his own equipment, (3) payment from Leaf River to McDonald was computed on the basis of volume unit or production, (4) McDonald paid his own workmen, (5) McDonald regulated the time of his workmen, (6) McDonald financed his operation, and (7) McDonald, not Leaf River, controlled the physical management of the equipment used and controlled the physical conduct of the workmen.
Upon this particular record, we think there is no rational basis or more than a scintilla of evidence upon which one could logically conclude that McDonald was the employee or servant of Leaf River. It follows that the case should not have been submitted to the jury, and we must reverse and render.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BOWLING and HAWKINS, JJ., concur.
LEE, J., takes no part.