571 So.2d 946 (1990)
Lois WEBSTER
v.
MISSISSIPPI PUBLISHERS CORPORATION.
No. 07-CA-58372.
Supreme Court of Mississippi.
November 28, 1990.
Cotton Ruthven, Waller & Waller, Jackson, for appellant.
Suzanne N. Saunders and Sheila R. Fortenberry, Saunders Abel & Fortenberry, Jackson, for appellee.
W. Wayne Drinkwater, Jr., John C. Henegan, Butler Snow O'Mara Stevens & Cannada, Jackson, Robb M. Jones, Nixon Hargrave Devans & Doyle, Washington, D.C., John Grower, William L. Smith, Brunini Grantham Grower & Hewes, Jackson, S. Russell Headrick, Armstrong Allen Prewitt Gentry Johnston & Holmes, Memphis, Tenn., Daniel L. Singletary, Heidelberg & Woodliff, Luther Ott, Ott & Purdy, Peyton S. Irby, Jr., Watkins Ludlam & Stennis, Jackson, Steven Moll, Sabin Bermant & Gould, New York City, Edward Sledge, III, Hand Arandall Bedsole Greaves & Johnson, Mobile, Ala., John Nangle, Des Plaines, III., Louis Watson, Wise Carter Child & Caraway, Vardaman S. Dunn, Watkins & Eager, Jackson, Jack M. Weiss, Phelps Dunbar Marks Claverie & Sims, New Orleans, La., for amici curiae.
En Banc.
*947 BLASS, Justice, for the Court:
THE ORIGINAL OPINIONS IN THIS CASE ARE WITHDRAWN AND THESE OPINIONS ARE SUBSTITUTED THEREFOR.

I.
Today's appellant complains of personal injuries caused by the negligent driving of a hauler for a newspaper publishing company. The complaint below was dismissed on the defendant's motion for summary judgment on the ground that the hauler was an independent contractor for whose torts the publisher is not responsible. We affirm. We cannot do otherwise without calling into question issues which have long been settled and making changes best left to the legislative branch.

II.

A.
Charles Savell has been hauling bundles of newspapers for the Mississippi Publishers Corporation (MPC) for forty-two years. He does business as Savell Trucking Company. Bennie W. Savell is Charles Savell's grandson and sometime employee. Doing the run for his grandfather one Saturday in April of 1985, Bennie apparently drove his grandfather's truck into the rear of Lois Webster's car, causing her extensive personal injuries.
In addition to hauling newspapers seven days a week from Jackson to Magee and Mendenhall, Savell carriers other freight. He runs an "office" at 822 South West Street in Jackson, a sort of central dispatch for the twelve other haulers that the MPC uses. Savell pays the rent and the twelve others pay Savell a fee for use of this central facility, a place where companies can call in to have their goods carried around the state. This arrangement has apparently developed over time, with Savell as the leader because of his longevity.
MPC owns The Clarion-Ledger, Jackson Daily News[1] and is the distribution agent for USA Today. On any given Saturday approximately 95,000 (MPC) newspapers are delivered. MPC's thirteen haulers pick up the prepackaged bundles of papers at the Jackson plant and deliver them, on time, in accordance with a delivery route. None of the haulers, however, actually makes home deliveries, nor do they handle money. If a retailer is dissatisfied with service, his call is ultimately directed to Reece Shook, State Operations Manager for The Clarion-Ledger. Virtually all of the newspapers are distributed by MPC in this manner.
Charles Savell and MPC sign a short form contract, yearly, outlining their respective rights and duties.[2] The contract *948 provides that MPC will furnish Savell with a delivery schedule and that Savell will deliver the newspapers to all points on the schedule at the scheduled times. The contract further provides that MPC will pay Savell a fixed sum of $2,944.00 per month. Savell is free to engage in other businesses and does so.
MPC, in addition, requires a valid driver's license from Savell, adequate equipment with which to haul the papers, and the physical ability to lift bundles. No other financial relationship is entered into: i.e., no advances, no loans, no Workers Compensation, no insurance requirements. The carriers are responsible for their own employees, maintenance, repairs, and fuel. Legal effect aside, all deponents "understand" that Savell is an independent contractor: that he is in business for himself. Savell: "I work for myself and I don't answer to the Clarion Ledger other than what is in this contract;" Williams Hunsberger, Circulation Director: "He's in business for himself."

B.
On May 23, 1985, Lois Webster filed her original complaint in the Circuit Court of Rankin County. Webster named Charles Savell, d/b/a Savell Trucking Company, and Bennie W. Savell as defendants. Mississippi Publishers Corporation was added as a party defendant about seven months later in an amended complaint filed December 19, 1985. The complaint charges that on April 20, 1985, a truck operated by Bennie W. Savell, an employee of Charles Savell, d/b/a Savell Trucking Company, struck the rear of an automobile in which Webster was riding, causing serious personal injuries.
After a volley of interrogatories, depositions and document production requests, MPC moved for summary judgment under Rule 56, Miss.R.Civ.P., asserting that the depositions of Charles Savell and two representatives of the MPC, William Hunsberger and Reece Shook, show that there is no genuine issue of material fact in dispute, and that, as a matter of law, Savell's relationship with MPC is that of an independent contractor, absolving MPC of liability in the premises. Webster asserts in her pleadings that Savell's relationship with MPC is a master and servant relationship.
Discovery developed the following facts:
1) The parties may terminate the hauling agreement without cause upon thirty days notice; no notice is required if there is a material breach of the contract;
2) Savell and MPC negotiate their contract and its terms;
3) Savell supplies his own truck, which he owns;
4) MPC contracts to have papers delivered in accordance with a delivery route and schedule;
5) There is no contractual right or obligation between MPC and Savell's employees;
6) The MPC-Savell business relationship has been long  forty-two years;
7) MPC's payment is a flat fee, but is renegotiated if the route changes substantially to reflect the route's requirements;
8) Savell does not purchase nor lease his route from MPC, sell newspapers himself, get additional customers nor deliver to the ultimate consumer; he has not collected money from retailers;
9) The contract calls the relationship one of an "independent contractor";
10) Savell receives no benefits apart from his monthly payment; MPC provides no insurance.
MPC based its motion for summary judgment upon the foregoing facts, established by depositions, interrogatories and documentary exhibits. Webster produced no evidence to dispute those facts. In this setting, the circuit court granted summary judgment, dismissing Webster's complaint against MPC. The circuit court certified the case for immediate appeal. Miss.R. Civ.P. 54(b); Fruchter v. Lynch Oil Co., 522 So.2d 195, 197-98 (Miss. 1988); Cox v. Howard, Weil, Labouisse, Friedrichs, Inc., 512 So.2d 897, 899-901 (Miss. 1987).

III.
A motion for summary judgment tests the legal sufficiency of all or part of *949 an opponent's case. Mississippi Moving & Storage Co. v. Western Elec. Co., Inc., 498 So.2d 340, 342 (Miss. 1986); Willis v. Mississippi Farm Bureau Mut. Ins. Co., 481 So.2d 256, 258 (Miss. 1985); Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1984). Where a party has moved for summary judgment on an issue, the burden of production rests on the party who, at trial, would have the burden of proof on that issue. Atkinson v. Natl Bank of Commerce, 530 So.2d 163, 166 (Miss. 1988); Grisham v. Long V.F.W. Post No. 4057, Inc., 519 So.2d 413, 415-16 (Miss. 1988); Galloway v. Travelers Ins. Co., 515 So.2d 678, 683 (Miss. 1987). As Webster would be burdened at trial with persuading the court of MPC's vicarious liability for Savell's negligence via respondeat superior, she bore the burden of production on summary judgment. Fruchter v. Lynch Oil Co., 522 So.2d at 198 (Miss. 1988). None of this changes MPC's burden, once the facts are on the table, of persuading the court (1) that there is no genuine issue of material fact and (2) that MPC is entitled to a judgment as a matter of law. Brocato v. Mississippi Publishers Corp., 503 So.2d 241, 243 (Miss. 1987); Pargo v. Elec. Furnace Co., 498 So.2d 833, 835-36 (Miss. 1986); Modling v. Bailey Homes & Ins., 490 So.2d 887, 891 (Miss. 1986); Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986); Gray v. Baker, 485 So.2d 306, 308 (Miss. 1986); Brown v. Credit Center, Inc., 444 So.2d 358, 362-63 (Miss. 1983).
When passing on a motion for summary judgment, the trial court must view the evidence in the light most favorable to the party against whom the motion has been made. Turner v. Johnson, 498 So.2d 389, 391 (Miss. 1986); Adams v. Fred's Dollar Store, 497 So.2d 1097, 1099 (Miss. 1986); Hudson v. Bank of Edwards, 469 So.2d 1234, 1238 (Miss. 1985); Vickers v. First Mississippi Natl Bank, 458 So.2d 1055, 1061 (Miss. 1984). Generally, a summary judgment motion should be denied where the record is incomplete regarding a material fact. Smith v. Sanders, supra, 485 So.2d at 1054-55.
MPC argues forcefully that the status issue is one of law, peculiarly susceptible of resolution on summary judgment. Where the status issue has been fully fleshed out and there are no genuine issues of material fact, summary judgment may be appropriate. Fruchter v. Lynch Oil Co., 522 So.2d 195, 199-201 (Miss. 1988).

IV.
The latest decisions of this Court dealing with the problem of distinguishing between independent contracts and agency or employment, discuss in some depth the issues involved, and the cases indisputably require that the judgment of the trial court be affirmed.[3]See Fruchter v. Lynch Oil *950 Co., 522 So.2d 195, 201 (Miss. 1988) (determining that relation of master and servant was not established as between gasoline distributor and service station attendant and finding that where principal was concerned only with ultimate results and not details of agent's work, then principal was not liable for agent's acts); Champion Cable Constr. Co., Inc. v. Monts, 511 So.2d 924, 927-29 (Miss. 1987) (held cable lineman to be subcontractor of cable construction company after finding that cable construction company had agreed to pay lineman for performance of specific task with lineman's own equipment and that lineman was responsible for liability insurance and payment of his own employees); Leaf River *951 Forest Prod., Inc. v. Harrison, 392 So.2d 1138, 1142-43 (Miss. 1981) (finding independent contractor relation existed as between sawmill operator and logging contractor since payments from sawmill operator to logging operator were computed on basis of volume unit or production and also since logging operator controlled physical management of equipment and employees used). We do not find a single authority which dictates reversal, nor do we find, anywhere, any genuine issue of material fact that remains unresolved. Webster had the duty to respond in the trial court, but no issue of fact was raised by the affidavits or the depositions. See Galloway v. Travelers Ins. Co., 515 So.2d 678, 683 (1987) (stating that for summary judgment, movant had burden of production only where movant would have had burden of proof at trial).
Plainly, the scheduling of delivery of the freight at fixed times at several destinations and the enforcement of the terms of the contract cannot be found to confer sufficient control to convert the hauler and his employees into employees of the owner of the freight under the decisions of this Court. The requirement of the contract presently in issue that the hauler deliver the newspapers to several destinations before or within a fixed time merely constitutes the ultimate performance sought to be obtained, not control. See Miss. Code Ann. § 71-3-3-(s) (1972) (control as to result does not make one employer under Worker's Compensation Statute); Fruchter, 522 So.2d at 199 (stating that if principal was concerned only with ultimate results rather than the details of agent's work, then principal was not liable for agent's acts); Champion Cable Constr. Co., 511 So.2d at 927-29 (1987) (explaining that independent contract relation merely called for payment for performance of specific task); Cook v. Wright, 177 Miss. 644, 171 So. 686, 689-91 (1937) (finding that subcontract to haul constituted contract for service and not for employment even though materials were to be hauled and delivered in accordance with approved plans, specifications, and requirements).
We are not confronted here with a void or even an uncertainty in the law, and therefore, we must simply declare the law as it very clearly now stands. See J.L. Teel Co., Inc. v. Houston United Sales, 491 So.2d 851, 857 n. 3 (Miss. 1986) (citing Southern Pacific Co. v. Jensen, 244 U.S. 205, 221, 37 S.Ct. 524, 531, 61 L.Ed. 1086 (1917) (for proposition that judges do and must legislate but may do so only interstitially).
The performance requirements in issue are insufficient to confer such control so as to convert the employees of the hauler into employees of MPC, and no genuine issue of material fact remains unresolved. This case is therefore affirmed.
AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER and ANDERSON, JJ., concur.
ROY NOBLE LEE, C.J., and ROBERTSON, SULLIVAN and PITTMAN, JJ., dissent.

ON PETITION FOR REHEARING
ROBERTSON, Justice, dissenting.

I.
I regret that I cannot agree with the Court's decision. The issue is of some importance and I think it appropriate to state my views.
Today's appeal challenges that we take seriously a rule of law we have long given lip service. At least since 1885 we have said the proverbial independent contractor defense is not available to one who holds the right to control[1] a tortfeasor's injury-causing conduct. Here Mississippi Publishers Corporation (MPC) by contract enjoys full legal right of control of the particular *952 details of his hauler's work proximate to the risk of harm actualized on April 20, 1985. For reasons I cannot find expressed or implicit, the Court today affirms judgment for MPC  a judgment entered summarily at that. Aside from injustice worked to Lois Webster, the Court's opinion suggests doubt regarding our will to enforce the law we declare.
If MPC had engaged Savell merely to haul its newspapers, indifferent to all else, I would affirm without hesitation.[2] Common sense suggests at least one detail to which no newspaper publisher may be indifferent if it hopes to stay in business, and that is timeliness of delivery. MPC by contract  the Independent Hauler Agreement  has reserved unto itself right of control of Savell's schedule and timing, viz., Savell "will deliver the newspapers to all points on such schedule at the scheduled times;" MPC's "newspapers are to be delivered in a timely manner." The contract gives MPC the right to terminate Savell upon "material breach." These contract terms suggest MPC's right of control of the operative details of Savell's work such that, at the very least, there is a genuine issue of material fact regarding MPC's right to control (and thus affect) the speed and care with which Savell's driver drove his truck. This is an issue of fact, and a material one at that, precluding summary judgment.
I do not question for a moment that our law has long empowered persons to make and operate under business arrangements in which one pays the other for performing a task without incurring liability to third persons for the contractor's defaults. Such contractors are commonly labeled independent contractors. This is but one of several facilities our law affords entrepreneurs whereby they may limit their liability. See also the device of the corporation, the limited partnership, the vessel owner's Limitation of Liability Act, 46 U.S.C. § 183, not to mention the private facility of insurance. But a look out the window reveals many who have relied upon these facilities and may legitimately demand that such reliance be respected, absent powerful countervailing circumstances. But the quid pro quo for enjoyment of the independent contract's limitation of liability is respect for its sine qua nons. A party may not disregard the grounds rules prescribing the independent contractor relationship and at once demand protection from third party liability, yet that is precisely the privilege MPC demands here.
It is perhaps natural that MPC would want to eat its cake and keep it as well. It is our job to prevent such excesses.
I regard the right to control test sound in theory and in practice. An employee has been thought one who works at the employer's direction in exchange for a wage. Because the employer supervises the details of the employee's work, the employer has practicable power to prevent the employee from committing torts; and the rule of respondeat superior gives the employer a strong incentive to do this. White's Lumber & Supply Co. v. Collins, 186 Miss. 659, 672, 191 So. 105, 106 (1939). The independent contractor by definition does not work under the employer's (more properly, the principal's) direction but rather promises a certain output in exchange for the contract price. Because the principal does not supervise the inputs into this contractual performance, he is not in a good position to prevent the independent contractor's torts and should not in justice be held liable for those torts absent independent *953 negligence.[3]McDonald v. Hall-Neely Lumber Co., 165 Miss. 143, 151-152, 147 So. 315, 316 (1933); Kisner v. Jackson, 159 Miss. 424, 428, 132 So. 90, 91 (1931). Against this backdrop we have regularly repeated the legal right of control test for deciding whether the relationship is one of employer/independent contractor of employer/employee. Magee, Administratrix v. Transcontinental Gas Pipe Line Corp., 551 So.2d 182, 186, (Miss. 1989); Champion Cable Const. Co., Inc. v. Monts, 511 So.2d 924, 927 (Miss. 1987); Georgia-Pacific Corporation v. Crosby, 393 So.2d 1348, 1349 (Miss. 1981).
This Court has spoken to issues related to today's in a workers' compensation context.[4]Laurel Daily Leader v. James, 224 Miss. 654, 80 So.2d 770 (1955) held a fifteen-year-old working a newspaper route an employee and entitled to compensation benefits when injured while riding his motorcycle delivering papers. Havens v. Natchez Times Publishing Co., 238 Miss. 121, 117 So.2d 706 (1960) is to like effect, citing general independent contractor law. Certain Havens wording appears apt.
But it is contended that the appellee [the newspaper] did not actually exercise all of the rights conferred upon it in the written contracts in the instant case. [The contract read: "All deliveries shall be made as quickly as possible... .] However, the test of whether or not a person is an employee is not always whether or not the alleged employer actually controls the alleged employee, but whether he has the right to control."
238 Miss. at 127, 117 So.2d at 709.
It is true that in 1956[5] the legislature partially repealed the Laurel Daily and Havens holdings. Miss. Code Ann. § 71-3-3(d) (Supp. 1988) excludes from the Compensation Act's definition of "employee"
... any individual performing service in, and at the time of, the sale of newspapers or magazines to ultimate consumers under an arrangement under which the newspapers or magazines are to be sold by the individual at a fixed price, the individual's compensation being based on the retention of the excess of such price *954 over the amount at which the newspapers or magazines are charged to the individual, whether or not the individual is guaranteed a minimum amount of compensation for such service or is entitled to be credited with the unsold newspapers or magazines returned.
This exclusion removed from compensation coverage the familiar "paper boy." MPC gains no advantage from this statutory exclusion as its contract with Savell is quite different. The same statute excludes as well "all independent contractors." Presumably the general contours of that legal status, as outlined in Laurel Daily and Havens, remain good law. If so, Savell is quite likely not an independent contractor.
Statutes are expressions of public policy made by that department of government charged primarily to make public policy and often have force beyond that expressed. J.L. Teel Co., Inc. v. Houston United Sales, Inc., 491 So.2d 851, 857 (Miss. 1986). It is not quite apparent why on principle newspaper boys should be removed from the coverage of the compensation act and not haulers like Savell. The better perspective, however, is from a step back where we see the general definitions of, and divide between, employees and independent contractors, from whence Miss. Code Ann. §§ 71-3-3(d) and (r) (Supp. 1988) appear an aberration in an otherwise coherent scheme.
Today's question is more narrow. On this record, does Rule 56, Miss.R.Civ.P., empower the Circuit Court to decide summarily that Savell was an independent contractor, thus exonerating MPC of liability for Webster's injuries? The question turns on whether there may be found in the record a genuine issue of material fact on the matter of MPC's right of control of those details of Savell's work proximate to the risk of harm here actualized. Laurel Daily and Havens cinch the point for reversal. Beyond these our other cases in the field suggest a like result, including most recently Magee which states "[w]hat is critical is whether ... [MPC] maintains any right of control over the performance of that aspect of the work that has given rise to the injury." Magee, 551 So.2d at 186.
In Blackmon v. Payne, 510 So.2d 483 (Miss. 1987) this Court held as error the trial court's entry of summary judgment in favor of defendant trucking company. Citing a direct conflict in evidence between an affidavit and a deposition submitted by Payne, the tortfeasor, concerning whether Payne worked exclusively for the trucking company, this Court held that the determination of Payne's relationship with the trucking company was a question for further litigation. Blackmon tends toward reversal here.
In contrast, Fruchter v. Lynch Oil Co., 522 So.2d 195 (Miss. 1988) held that a gasoline distributor's relationship to a service station operator was that of independent contractor. Fruchter is distinguishable on its facts. Lynch Oil's enterprise vis-a-vis the service station operator neither exercised control nor created risks remotely comparable to the facts at bar. Still, much there said affords perspective today.
Our cases in the field revolve around the idea of control. The right to control is as important as de facto control at the tortious moment, for the right to control the work of another "carries with it the correlative obligation to see to it that no torts shall be committed" by the other in the course of the work. [Citation omitted] Our question thus is not what Lynch Oil did but what it may have done on August 17, 1984. [Citation omitted]
Fruchter, 522 So.2d at 199. As there was no evidence Lynch Oil had any right of control over the details of the work proximate to Fruchter's injuries, Fruchter is no authority for affirmance today.
Turner v. Williams, 257 So.2d 525 (Miss. 1972) concerned a charge of wrongful cutting of timber. Turner argued that his timber cutter, Rogers, was an independent contractor. Because Turner had the right to direct which trees were to be cut, the Court held his control sufficient that he was not entitled to judgment as a matter of law on his independent contractor defense. Turner, 257 So.2d at 527. In Leaf River Forest Products, Inc. v. Harrison, 392 *955 So.2d 1138 (Miss. 1981), we recognized the independent contractor defense because "the contract gave Leaf River no right of control over the time, manner or method of doing the work... ." Leaf River, 392 So.2d at 1141. See also, Crescent Baking Co. v. Denton, 147 Miss. 639, 647-48, 112 So. 21, 22-23 (1927). Lewis v. Brogdon, 208 So.2d 761, 769 (Miss. 1968) decreed a like result after two trials on the merits, although "timing was an important part of the result to be achieved by shipper." Of course, defendant's right of control need not extend to every detail of the work before he may be held vicariously liable, only those details which may be said proximate to the risk of harm actualized in the case at bar. Magee, Administratrix, Etc. v. Transcontinental Gas Pipe Line Corp., supra.
MPC aggressively pursues the role of this state's leading print media enterprise. Not only do its newspapers' reporters cover the news across the state, it seeks to reach readers in all eighty-two of our counties. To achieve this end, it dispatches trucks from Jackson and onto our roadways 365 days a year directed toward distribution centers near and far. MPC holds the legal right to  and does  prescribe the routes for these trucks and points of delivery. Time is of the essence in this work.[6] Employing conventional terminology, MPC maintains sufficient control over its haulers that timely daily delivery is accomplished. Few occurrences are of greater consternation than late delivery.
MPC's goal is to "shoot for 6:30 a.m. delivery" of The Clarion Ledger to its customers each day. The target delivery deadline for The Jackson Daily News, the afternoon newspaper, is between 5:00 and 5:30 p.m. each day. MPC's Hunsberger on deposition said there are times when these deadlines are not met, citing "press problems, distribution problems, contractors breaking down, carriers breaking down, a lot of factors." In characterizing the delivery deadlines, Hunsberger said, "That's ... when we like to see all the papers delivered by." MPC has done a "time study" on its haulers, using one of its employees to follow the carriers and keep detailed records on the routes followed and the times when deliveries are made. On deposition, MPC's State Operations Manager Shook stated he would tolerate a contractor's truck breakdown causing the papers to be three hours late one night, but if this continued for several weeks, he would tell the contractor "he needed a new vehicle." He said he would not tolerate this for as long as a month.
In the end, two points predominate. First, neither the label "Independent Hauler Agreement" nor the parties' (MPC and Savell) understanding of the nature of their relationship is controlling. See Elder v. Sears Roebuck & Co., 516 So.2d 231, 235 (Miss. 1987); Royal Oil Co., Inc. v. Wells, 500 So.2d 439, 447 (Miss. 1986); Hardy v. Brantley, 471 So.2d 358, 369-74 (Miss. 1985); Hobbs v. International Paper Co., 203 So.2d 488, 490 (Miss. 1967); cf. Havens v. Natchez Times Publishing Co., 238 Miss. at 124-28, 117 So.2d at 707-09.
Second, and overriding  at least in today's summary judgment context  are the undisguised and inexorable realities of MPC's relationship with Savell. MPC has been careful to secure for itself the right to control timely delivery. Its written contract with Savell expressly confers this right. Without doubt, significant failure to make timely delivery would constitute a material breach, authorizing MPC to terminate Savell without notice. MPC's right to control timely delivery means that Savell's drivers may not be allowed to pull off the road and rest if they get sleepy.[7] All of *956 this suggests that Webster, not MPC, should have been the party moving for (partial) summary judgment.
A not insignificant backdrop is MPC's certain level of indifference to what else Savell does so long as he timely does his job. MPC's Reece Shook gives the point potency. When asked if a hauler showed up at the newspaper visibly intoxicated, would MPC allow him to leave with the newspapers, Shook stated "that will be left entirely up to the man that they work for." Hunsberger, on the other hand, stated that there was no kind of testing or requirements for qualifications for Savell's drivers other than the need for a valid driver's license and that he look at his equipment "to be sure that it will make it down the road."
These points, coupled with the facts elaborated by the majority, convince me that there are present genuine issues of material fact regarding MPC's legal control of  and hence legal responsibility for the torts of  its hauler of 42 years, Charles Savell, d/b/a Savell Trucking. This conclusion precludes summary disposition of Webster's claim against MPC. I would reverse.
ROY NOBLE LEE, C.J., and SULLIVAN and PITTMAN, JJ., concur.
NOTES
[1] MPC ceased publishing The Jackson Daily News on June 9, 1989. The facts narrated here are those reflected by the record formally closed before that time.
[2] The form contract reads as follows:

Independent Hauler Agreement
This agreement is made on the ____ day of ____, 19__, at ____ between Mississippi Publishers Corporation and ____ of ____, hereinafter called "the hauler".
Whereas Mississippi Publishers Corporation is the publisher of the Clarion Ledger  Jackson Daily News and distributor of U.S.A. Today and the hauler desires to engage in the independent business of transporting the Clarion Ledger/Jackson Daily News and USA Today, the parties therefore agree as follows:
(1) Mississippi Publishers Corporation will furnish the hauler with a delivery schedule and the hauler will deliver the newspapers to all points on such schedule at the scheduled times.
(2) Mississippi Publishers Corporation will pay the hauler ____ per month for delivery of the newspaper. Mississippi Publishers Corporation will pay the hauler once every month for services rendered during the month.
(3) It is understood that the hauler is free to engage in other business activities, but it is understood and agreed that Mississippi Publishers Corporation's newspapers are to be delivered in a timely manner in accordance with the delivery schedule. The hauler agrees that he will insert no foreign matter into the newspapers without prior consent of Mississippi Publishers Corporation.
(4) It is mutually agreed that the manifest delivery routes and schedules and all information contained therein are the property of Mississippi Publishers Corporation and are to be held in strictest confidence by the hauler at all times. The hauler agrees not to disclose any such information to anyone other than a representative of Mississippi Publishers Corporation, or the hauler's employees or agents who require this information in order to deliver the newspapers or to otherwise comply with this agreement.
(5) Mississippi Publishers Corporation and the hauler agrees if there is a material breach of this agreement by either party, it may be terminated without any advance notice by the other party. In addition, the parties agree that either party may terminate this agreement without any breach having occurred and without cause upon thirty (30) days advance written notice, or such shorter time as may be mutually agreed upon.
[3] See, e.g., Fruchter v. Lynch Oil Co., 522 So.2d 195, 199, 201 (Miss. 1988) (holding that gasoline distributor lacked sufficient control over service station attendant to establish relation of master and servant after stating that employment status issue constituted question of law); Elder v. Sears, Roebuck Co., 516 So.2d 231, 235 (Miss. 1987) (finding Sears liable for patron's slip and fall at catalogue store because Sears, in addition to evidence of control, induced customers to rely upon Sears in doing business with its agent, catalogue store); Blackmon v. Payne, 510 So.2d 483, 489 (Miss. 1987) (holding genuine issue of material fact existed as to whether driver of tractor/trailer was independent contractor or agent of trucking company thereby precluding summary judgment where trucking company leased trailer to driver and driver's affidavit contradicted his deposition regarding issue of exclusiveness of his performance to trucking company); Hardy v. Brantley, 471 So.2d 358, 374 (Miss. 1985) (finding Hinds General Hospital liable for negligence of emergency room staff because the hospital placed emergency room physicians in position which induced public to rely upon hospital); Ingalls Shipbuilding Corp. v. McDougald, 228 So.2d 365, 367 (Miss. 1969) (recognizing that ordinarily prime contractor was not liable for torts of independent contractor, even though prime contractor who employed an independent contractor was found nevertheless answerable for his own negligence for failure to exercise reasonable care to provide employees of independent contractor with reasonably safe place to work upon ship under repair); Smith v. Jones, 220 So.2d 829, 833 (Miss. 1969) (in addressing action against owner and contractor by contractor's laborer for injuries sustained during construction of chicken house, Court held contractor was independent contractor and not servant of owner even though owner furnished material as well as particular truck which had caused injuries in question. The Court explained its reasoning in stating that owner had contracted for completed job and exercised absolutely no control over details of work or acts of independent contractor or his employees); Hercules Powder Co. v. Westmoreland, 249 Miss. 849, 164 So.2d 471, 475 (1964) (clearly finding no master and servant relation where driver owned his own truck and other equipment and hired his own employees to dig and haul stumps which were sold to defendant company); Mississippi Power & Light Co. v. Walters, 248 Miss. 206, 158 So.2d 2 (1963) (determining that independent contractor relation existed between hauler and drilling company); Mississippi Employment Sec. Comm'n v. Plumbing Wholesale Co., 219 Miss. 724, 69 So.2d 814, 818-20 (1954) (Court held that relationship of master and servant was established where plumbing company, which employed laborer at regular intervals to unload plumbing materials, had right to control laborer and had in fact exercised such right when it deemed fit. Court, therefore, found employer was liable for state unemployment taxes); Lancaster v. Lancaster, 213 Miss. 536, 57 So.2d 302, 309 (1952) (Court determined that contractor was under no legal duty to employee of independent contractor with respect to dangers or exposures which were under sole control of independent contractor. Facts of case revealed that plaintiff was struck by automobile of defendant independent contractor which was driven by his employee who was engaged in sprinkling highway shoulder in connection with contracted construction work); Meridian Taxicab Co. v. Ward, 184 Miss. 499, 186 So. 636, 638-40 (1939) (determining that driver of taxicab was servant of taxicab company as driver's physical acts were subject to control of cab company in details of performance); Crosby Lumber & Mfg. Co. v. Durham, 181 Miss. 559, 179 So. 285, 287-88 (1938) (Court defined independent contractor relation as one who contracted with another to do something for him, but was not controlled nor subjected to right of control by such other with respect to his physical conduct in performance of undertaking. Court then held that contract between trucker and lumber company created independent contractor relationship. Court explained that contract in issue expressly provided lumber company with no control over methods of hauling, and Court thereafter determined that power given by contract to terminate at will constituted one factor to consider in determining whether contract created relationship of master and servant. However, Court firmly stated that power to terminate at will did not constitute such control over trucker so as to establish relation of master and servant); Cook v. Wright, 177 Miss. 644, 171 So. 686, 689-91 (1937) (Court held that master and servant relation was not established between employee of subcontractor and contractor, who had sublet contract for loading and hauling, merely because it provided that work was to be done to complete satisfaction of Highway Department and also required competent workmen. Court alternatively held that where contractor's obligation was to produce certain net result by means and methods over which, so far as concerned details of management of means and of physical conduct of himself and employees, contractor then had own control, then contract constituted contract for service as opposed to contract of service. Contract in question was to procure services of loading, hauling and distributing gravel, stone, sand, and clay in accordance with approved plans, specifications, and requirements of the State Hwy. Dept. of Mississippi); Texas Co. v. Jackson, 174 Miss. 737, 165 So. 546, 550 (1936) (Court stated that for decision of whether one was servant or independent contractor, ultimate question was whether physical conduct of employee was controlled, or subject to right of control, by employer. Thereafter, Court held master and servant relation existed as between petroleum company and its commission agent and person employed by agent since contract at bar unambiguously and expressly created such relation); Gulf Coast Motor Express Co. v. Diggs, 174 Miss. 650, 165 So. 292, 293 (1936) (Court determined that relation of master and servant existed where common carrier for hire contracted with motor trucks to deliver and accept freight because common carrier retained substantial control as to means and methods used in carrying freight. Court explained that independent contractor was one rendering services in course of his occupation which represented will of his employer as to results alone, and not as to means of accomplishing those results); Shell Petroleum Corp. v. Linham, 163 So. 839 (Miss. 1935) (clearly finding oil and sales requirement contract established independent contractor relation between producer and wholesale dealer in petroleum products and lessee of gasoline filling station); See also Crescent Baking Co. v. Denton, 147 Miss. 639, 112 So. 21 (1927) (Court held that independent contractor relation was established where truck driver was engaged in delivering bread along designated route of baking company from which truck driver purchased bread and over whom baking company exercised no control, except as to route, in operation of business and in selling and delivering bread to patrons. Court explained that truck driver was simply vendor of bread on his own account even though he sold in prescribed territory and on prescribed route).
[1] See New Orleans, Baton Rouge, Vicksburg and Memphis Railroad Co. v. Norwood, 62 Miss. 565, 568 (1885); Hutchinson-Moore Lumber Co. v. Pittman, 154 Miss. 1, 12, 122 So. 191, 193 (1929); Texas Company v. Mills, 171 Miss. 231, 243, 156 So. 866, 869 (1934) down through Fruchter v. Lynch Oil Co., 522 So.2d 195, 199 (Miss. 1988).
[2] In a survey of other states, "the most important consideration in the determination of whether a carrier is an employee or an independent contractor is the amount of control the employer possesses over him." Annotation, Newspaper Boy or Other News Carrier as Independent Contractor or Employee for Purposes of Respondeat Superior, 55 A.L.R.3d 1216, 1219 (newscarriers as independent contractors). This A.L.R. annotation focuses exclusively on newspapers and their carriers and the legal status of the relationships into which they have entered. The cases prove strikingly helpful for pointing out that the facts of each relationship are key, but also prove on closer inspection to be nearly universally inapplicable to today's case because of the details of those relationships. See also Note, Newspaper Carrier  Servant or Independent Contractor 46 Ky. L.J. 596, 598 (1958).
[3] See Landes and Posner, The Economic Structure of Tort Law 207 (1987). That the rule of respondeat superior is settled is not to suggest its rationale is unproblematic. It has puzzled some of our most pre-eminent pundits. See Holmes, Law in Science and Science in Law, 12 Harv.L.Rev. 443, 455 (1899).
[4] Under Mississippi's Workmen's Compensation Statute § 71-3-1, et seq., (Supp. 1988), the following definitions are analogous and thus instructive, though not controlling:

Section 73-3-3(d): "Employee" means any person, including a minor whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, written or oral, express or implied, provided that there shall be excluded therefrom all independent contractors and especially any individual performing service in, and at the time of, the sale of newspapers or magazines to ultimate consumers under an arrangement under which the newspapers or magazines are to be sold by the individual at a fixed price, the individual's compensation being based on the retention of the excess of such price over the amount at which the newspapers or magazines are charged to the individual, whether or not the individual is guaranteed a minimum amount of compensation for such service or is entitled to be credited with the unsold newspapers or magazines returned.
Section 71-3-3(r): "Independent Contractor" means any individual, firm or corporation who contracts to do a piece of work according to his own methods without being subject to the control of his employer except as to the results of the work and who has the right to employ and direct the outcome of the workers independent of the employer and free from any superior authority in the employer to say how the specified work shall be done or what the laborers shall do as the work progresses, one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains the result.
See also Restatement (Second) of Agency §§ 2, 220 (1933).
The definitions found in the compensation act  with one quite relevant exception  appear consistent with those long embodied in our general law. See Dunn, Workers Compensation §§ 128, et seq. (1982). No legal imperative compels identical  or differing  definitions both for compensation purposes and in today's third party liability context. The law may not be a seamless web yet virtue hardly attends the judicial effort that consciously rents the web.
[5] The amendment was enacted on April 6, 1956. Miss. Laws ch. 344 (1956). The accident in Havens had occurred on July 31, 1955. Hence, Havens was decided under the compensation act as it pre-existed the amendment.
[6] Remember Laurel Daily Leader, Inc. v. James, 224 Miss. 654, 662, 80 So.2d 770, 772 (1955), the newspaper boy workers compensation case in which the Court observed "Circulation is a necessity for success. The delivery boys are just as much an integral part of the newspaper industry as are the typesetters and pressmen or the editorial staff."
[7] The record is not clear regarding the extent MPC demands strict compliance with its time schedule. The contract certainly empowers MPC to tell Savell he must deliver the newspapers to Mendenhall at 5:30 a.m. each morning and not a minute later, but we are not clear how strictly this is enforced. More significantly, the record is less than clear what role, if any, MPC's control of timely delivery may have played in the accident of April 20, 1985, and Lois Webster's attendant injuries.