I disagree with the majority's conclusion that APAC-Mississippi is entitled to summary judgment as a matter of law on the issue of its hauler's status as an independent contractor. I further disagree with its creative and somewhat disingenuous approach to reaching that conclusion. Whether there exists a sufficient degree of control to consider a relationship to be that of master/servant, principal/agent or independent contractor has long been considered a jury issue by this Court. The majority ignores the fact that in the factoring analysis developed in those cases prior to W.J. Runyon Son v. Davis, 605 So.2d 38
(Miss. 1992), as well as in cases decided since, the element of control is a critical issue. Whether a project owner or manager maintains a significant de jure right or de facto power to control the performance of elements of the work from which the injury has arisen has always been a jury question. Magee v.Transcontinental Gas Pipe Line Corp., 551 So.2d 182, 186 (Miss. 1989). Moreover, the majority erroneously finds that the circuit court properly excluded affidavits submitted by Richardson on the day of the hearing.
Summary judgment is inappropriate where there exist genuine issues of material fact. The very contract upon which the majority bases its conclusion that McCandless was an independent contractor as a matter of law, in and of itself, raises sufficient questions of material fact to place the question of APAC's relationship with McCandless before a jury. Furthermore, "when a movant for summary judgment relies on an affirmative defense, he must expressly present and conclusively prove all essential elements of that defense as a matter of law." Parkerv. Enserch Corp., 776 S.W.2d 638, 640 (Tex. App. 1989). APAC's submission of the contract and affidavit fail to prove conclusively that McCandless was an independent contractor. To the contrary, they raise significant jury questions on the issue of control.
The majority acknowledges that our attempts to articulate a formula for distinguishing between a master and servant or principal and agent relationship and independent contractor status have often resulted in disparate results. In particular, the author expresses his discomfort with the divergent conclusions reached in Webster v. Mississippi Publishers Corp.,571 So.2d 946 (Miss. 1990) and W.J. Runyon Son v. Davis,605 So.2d 38 (Miss. 1992). Noting that inconsistent results have often been reached because of the manner in which different justices have applied the various factors, the majority opinion ignores the reality that different results may result from different factual scenarios. Yet, eager to distinguish the case sub judice from the factually-similar Runyon, where we held that the independent contractor defense was inapplicable in light of a de facto or de jure right to control, the majority seizes on a subtle factual distinction — the existence of a written contract. Magically, the existence of a contract and the terms of that contract — and even the conduct of the parties vis-a-vis that contract — become another factor to consider. In this case, the contract, which it appears the majority never read, was made the determinative factor.
By expressly overruling "anything stated in Runyon to the contrary to today's holding," the majority tacitly rejects the "right to control" test which has been part of our independent contractor jurisprudence for more than a century. See, NewOrleans, Baton Rouge, Vicksburg and Memphis Railroad Co. v.Norwood, 62 Miss. 565, 568 (1885). Yet, even prior to Runyon,
we considered the existence of de facto or de jure control as an essential issue for a jury to consider. Magee, 551 So.2d at 186. That is, whether there is control by law or contract or actual control, the project owner may be found liable. The scope of the Runyon decision should not have taken anyone by surprise. Indeed, its author, former Justice Robertson, laid the groundwork for Runyon in his dissent to Webster. Moreover, inFruchter v. Lynch Oil Co., 522 So.2d 195 (Miss. 1988), though factually distinguishable, the author and several other members of today's majority went so far as to recognize:
 Our cases in the field revolve around the idea of control. The right to control is as important as de facto control at the tortious moment, for the right to control the work of another "carries with it the correlative *Page 156 
obligation to see to it that no torts shall be committed" by the other in the course of the work. [citation omitted] Our question thus is not what Lynch Oil did but what it may have done on August 17, 1984.
Fruchter, 522 So.2d at 199.
Generally, a project owner or director has no duty to see that an independent contractor performs his work in a safe manner. However, the Restatement (Second) of Torts provides:
 One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.
Restatement (Second) of Torts § 414 (1977). The comments further provide that the rule "applies when the employer retains some control over the manner in which the independent contractor's work in performed, but does not retain the degree of control which would subject him to liability as a master." Redinger v.Living, Inc., 689 S.W.2d 415, 417 (Tex. 1985), citing Restatement (Second) of Torts § 414, comment a (1965). Thus, even assuming arguendo that McCandless was operating as an independent contractor, there still remains a jury question of whether APAC exercised "more than a general right to order the work to start or stop." Id., citing Restatement (Second) of Torts, comment c (1965).
At the time of the accident, as the majority neglects to point out, affidavits in the record indicate that McCandless was hauling raw materials from APAC's loading facility to its asphalt plant. Moreover, the relationship between APAC and McCandless is strikingly similar to that which existed between the highway contractor and Whigham, the asphalt hauler in Runyon.
 We are told Whigham was an independent hauler who was self-employed. Whigham owned the thirty-five foot dump truck involved in the accident, made the payments on the truck, took care of the maintenance of the truck, and provided fuel for the truck. He was paid by the load and not by the hour. Runyon withheld no taxes from Whigham's compensation. Whigham says he could control how much money he made by how many loads he carried. He says he hauled for other companies besides Runyon. Prior to working on this project, Whigham maintained his own liability insurance in the statutory sum of $300,000.00. Whigham's only contacts with Runyon's employees were through the person who asked him to haul loads and the dispatcher who informed him where on the construction site he was to deliver the asphalt. Whigham says that Runyon did not exercise any control over how he got the asphalt from the place where he loaded his truck to the place on the construction area where he dumped his load.
Runyon, 605 So.2d at 47.
Similarly, McCandless held himself out to be a public hauler. He, like Whigham, owned his own truck and was required to provide for its maintenance, repair and fuel. He was paid by the load. APAC did not withhold Social Security or income taxes from McCandless' checks. McCandless provided his own insurance and financed his own operation. APAC did not direct the routes McCandless took when hauling materials; how the services were performed was left to his discretion.
In determining that McCandless was an independent contractor, the majority directs us to focus our attention upon the existence of a contract and the terms of that contract. I would invoke the majority to adjust its bifocals and read closely the contract conveniently appended to its opinion. Ironically, it is this contract between APAC and McCandless d/b/a B P Trucking which spells out the extent of their relationship and presents a jury question as to whether there existed a sufficient degree of control to preclude APAC's assertion of the independent contractor defense, or at least, raises a question of liability under the Restatement (Second) of Torts § 414. The majority erroneously maintains that this is clearly a contract between a principal and an independent contractor, not a master-servant agreement. However, under the terms of the contract, *Page 157 
McCandless was hired as a "trucking subcontractor" to provide hauling services at an APAC-controlled price. He worked under terms and conditions specified by APAC. He was required to use his 1981 International COF 4070B truck for hauling, not some other vehicle. He was required to maintain the truck and pay for all materials and labor furnished pursuant to the contract. McCandless was required to provide liability and property damage insurance, as well as compensation insurance for any employees, and to furnish APAC with evidence of such insurance. APAC, however, specified the minimum limits of coverage and required that the insurer be acceptable to the contractor. McCandless was further required to comply with APAC's rules and safety regulations. Only in the paragraph relieving APAC from any responsibilities to McCandless or any individuals he might employ under the applicable Unemployment and Worker's Compensation statutes is he labeled an "independent contractor."
The majority further errs in ruling that the circuit court properly struck the affidavits which Richardson submitted on the day of the hearing. Live testimony is permitted at a hearing without prior notice; no distinction should be made for the representation of affidavits. Rule 56(c) provides only that the party opposing the motion "prior to the day of the hearing mayserve opposing affidavits." M.R.C.P. 56(c) (emphasis added). Likewise, Rule 6(d) requires that "opposing affidavits may beserved not later than one day before the hearing, unless the court permits them to be served at some other time." M.R.C.P. 6(d) (emphasis added). While the nonmoving party who waits until the day of the hearing to submit any affidavits in opposition to a motion for summary judgment does so at his own peril, neither rule mandates submission at any prior time. As we explained inO'Cain v. Harvey Freeman and Sons, 603 So.2d 824 (Miss. 1991), "M.R.C.P. 56(c) imposes no affirmative requirement on the nonmoving party to respond before the hearing on the motion. Rule 56(c) by its own terms leaves that option with the nonmoving party." O'Cain, 603 So.2d at 829. We have allowed the amendment of pleadings at the eleventh hour. See Queen v. Queen,551 So.2d 197, 201 (Miss. 1989) (pursuant to Rule 15(b) amendment of pleadings allowed "at any time even after judgment");Independent Life Accident Co. v. Peavy, 528 So.2d 1112, 1116 (Miss. 1988) (amendment of pleadings allowed during trial to permit pleadings to conform to the evidence presented). Absent a showing of prejudice by the opposite party, we should likewise allow the same liberal filing of affidavits pursuant to Rule 56(c).
The language of Rules 56(c) and 6(d) adds further ambiguity. Affidavits are required to be "served," not "filed." What did the authors of the rules intend by requiring affidavits to be served? Rule 5(b) provides several acceptable means of "service" including mail, personal delivery to a party or his attorney, or electronic transmission. Ostensibly, mailing a copy of an affidavit on the day before the hearing should satisfy Rules 56(c) and 6(d). Moreover, to whom should such service be directed?
We cannot lose sight of the fact that summary judgment "affects the substantive rights of litigants." Official Comment, M.R.C.P. 56.
 [S]ummary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried. Given this function, the court examines the affidavits or other evidence introduced on a Rule 56 motion simply to determine whether a triable issue exists, rather than for the purpose of resolving that issue.
Id.
The circuit court should have considered the affidavits, all of which illustrated the existence of material fact issues in dispute. There was nothing "conclusory" about the affidavits. They referenced comments by McCandless indicating only that he "worked" for APAC and that the truck had been overloaded by APAC. These statements render no legal conclusions; they offer evidence of the existence of a material factual dispute: McCandless' relationship with APAC. For the same reason, Mr. Richardson's statement *Page 158 
that McCandless had told him that he was "double covered by both my insurance and by APAC's insurance" is admissible. M.R.E. 411 allows the introduction of evidence of liability insurance for matters such as proof of agency, clearly a central issue in this case. Royal Oil v. Wells, 500 So.2d 439, 449 (Miss. 1986).
The majority errs in upholding the circuit court's decision to exclude the affidavits Richardson sought to introduce at the hearing. It compounds that error and does a disservice to our jurisprudence by finding as matter of law, on the basis of the contract, that McCandless worked for APAC as an independent contractor. Moreover, I object to its general pronouncement overruling those parts of Runyon not consistent with this opinion. Without more, who can anticipate what thrills and spills we next might encounter on this long roller coaster ride through a world of masters, servants, agents, principals and even independent contractors? Accordingly, I dissent.
BANKS, J., joins this opinion in part.